******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE EGYPT E. ET AL.*
(SC 19643)
(SC 19644)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.

*Argued May 3—officially released July 21, 2016***

*Dana M. Hrelic*, with whom was *Brendon P. Levesque*, for the appellant in Docket No. SC 19643 (respondent father).

*Michael D. Day*, for the appellant in Docket No. SC 19644 (respondent mother).

*Michael Besso*, with whom, on the brief, were *George Jepsen*, attorney general, *Benjamin Zivyon* and *Tammy Nguyen-O'Dowd*, assistant attorneys general, for the appellee in both cases (petitioner).

*James W. Lux*, for the minor children in both cases.

*Opinion*

EVELEIGH, J. The respondent father, Morsy E., and the respondent mother, Natasha E., filed separate appeals from the judgments of the trial court terminating their parental rights as to their minor children, Egypt E. and Mariam E. On appeal, the respondents claim that the trial court improperly terminated their parental rights to their minor children[1] pursuant to General Statutes (Rev. to 2013) § 17a-112 (j).[2] As a threshold matter, the petitioner, the Commissioner of Children and Families,[3] asserts[4] that this court lacks subject matter jurisdiction to hear the respondents' appeals because the respondents did not appeal from the judgments of the trial court terminating their rights as to their minor children on the ground that reunification efforts were not required under General Statutes (Rev. to 2013) §§ 17a-112 (j) and 17a-111b (b).[5] After a thorough review of the record, we conclude that, due to a clerical error at the trial court, the record is not sufficiently clear to determine whether the respondents were properly notified of the basis of the trial court's judgments such that they could properly appeal from its determination that the petitioner was not required to make reunification efforts pursuant to §§ 17a-112 (j) and 17a-111b (b). Accordingly, because the clerical error at the trial court implicates both the integrity of the trial court's record keeping and the due process rights of the respondents to appeal from the judgments of the trial court terminating their parental rights, we must remand the matter for a new trial.

The following facts, as found by the trial court, and procedural history are relevant to the disposition of this appeal. On September 1, 2013, the respondents brought Mariam to the Connecticut Children's Medical Center (hospital) for treatment of a right shoulder injury. Mariam was seven weeks old at that time. An examination of Mariam revealed multiple injuries to her shoulders, legs, stomach, and nose, including six bone fractures. The respondents did not provide an explanation for these injuries. Suspecting abuse, the physician assistant who examined Mariam notified the petitioner. On the same day, while Mariam was still in the hospital, the petitioner took Mariam and Egypt into custody pursuant to an emergency ninety-six hour administrative hold. See General Statutes (Rev. to 2013) § 17a-101g.

On September 5, 2013, the petitioner filed neglect petitions alleging that the minor children were being permitted to live under conditions, circumstances, or associations injurious to their well-being. On October 4, 2013, the petitioner filed petitions to terminate the respondents' parental rights to their minor children on the basis of certain alleged acts of parental commission or omission denying the minor children care, guidance, or control necessary for their well-being. See General Statutes (Rev. to 2013) § 17a-112 (j) (3) (C). The respon-

dents denied these allegations. The trial court subsequently consolidated the neglect and termination petitions for the purpose of trial.

On June 5, 2014, approximately six months before the trial commenced, the petitioner filed a "motion for finding of no reunification efforts" pursuant to § 17a-111b. Specifically, the petitioner sought a finding, pursuant to § 17a-111b (b) (1) (B), that no reunification efforts were required on the basis of the severe physical abuse of Mariam. Four days later, the petitioner filed a motion to review the permanency plans for the minor children. The trial court reserved judgment on these motions until after trial.

On June 1, 2015, after a nine day trial, the trial court rendered judgments granting the neglect and termination petitions in accordance with a written memorandum of decision. With respect to the neglect petition on behalf of Mariam, the court made findings, principally based on the unexplained cause of Mariam's injuries, that Mariam was abused in that she sustained physical injuries by "nonaccidental means," was "denied proper care and attention, physically, educationally, emotionally or morally," and had been "permitted to live under conditions, circumstances or associations injurious to her well-being." With respect to Egypt, the court found that she was neglected under the doctrine of predictive neglect on the ground that she lived in the same home where Mariam had sustained her injuries.[6]

With respect to the adjudication phase of the termination proceedings, the trial court determined that the petitioner had proven, by clear and convincing evidence, all of the elements necessary to terminate the respondents' parental rights as to the minor children. First, the trial court found by clear and convincing evidence that the petitioner had made reasonable efforts at reunification pursuant to § 17a-112 (j) (1), and that the respondents were unable or unwilling to benefit from such efforts. Additionally, the trial court found that both respondents had committed an act of commission or omission that denied the minor children the care necessary for their well-being.[7] See General Statutes (Rev. to 2013) § 17a-112 (j) (3) (C). Regarding the dispositional phase, the trial court concluded that there was clear and convincing evidence that it was in the minor children's best interests to terminate the respondents' parental rights. See General Statutes (Rev. to 2013) § 17a-112 (j) (2). Finally, the trial court found that "further efforts at reunification are not appropriate for [the respondents] with regard to [the minor children]." The respondents timely appealed.[8]

On the same day as it issued the memorandum of decision terminating the parental rights of the respondents, the trial court also granted the motion to review the permanency plans. In its order, the trial court adopted the factual findings and case history from its

memorandum of decision. Additionally, among other findings, the trial court found "by clear and convincing evidence that further efforts to reunify [the respondents] with either child are not appropriate." The next day, the trial court executed orders on a standard Judicial Branch form entitled "Co-termination of Parental Rights and Appointment of Statutory Parent/Guardian" with respect to each of the minor children. In these orders, the trial court noted, by checking the appropriate boxes, that it found by clear and convincing evidence that the petitioner made reasonable efforts to reunify the respondents with their minor children and that the respondents were unable or unwilling to benefit from reunification efforts. The trial court did not check the box on either order labeled, "[r]easonable efforts to reunify are not required . . . because the court determined at a hearing in accordance with [§] 17a-111b . . . or determined at a trial on the petition that such efforts are not required."

On that same day, the trial court granted the petitioner's "motion for finding of no reunification efforts" noting as follows: "See [c]ourt's written order [on the] motion to review permanency plan dated [June 1, 2015]." There is no indication on the order that it was ever sent to the parties. This order was not, however, included in the trial court file, which was certified by the trial court clerk on June 26, 2015, and delivered to the appellate clerk's office on July 2, 2015. Instead, the certified copy of the trial court file includes an unexecuted order sheet attached to the petitioner's "motion for finding of no reunification efforts." Furthermore, a printed copy of the electronic docket for these matters dated June 26, 2015, shows that neither the petitioner's motion nor the court's order had been entered by the trial court clerk.

Indeed, at oral argument before this court, there was some confusion as to whether the trial court had granted the petitioner's "motion for finding of no reunification efforts." Counsel for both of the respondents indicated that this motion was not granted. Counsel for the petitioner indicated that there was some ambiguity as to whether the trial court had granted the motion because "the record does not reflect any endorsement of that motion one way or another," but the trial court's statements in its memorandum of decision "in effect" granted the motion.

After oral arguments were heard on May 3, 2016, this court ordered the trial court as follows: "Pursuant to [Practice Book] § 60-5, the trial court is hereby ordered to complete the court record by responding to the following question: 'In its judgments granting the termination of parental rights petition[s] [as to the] respondents, did the trial court pursuant to either [§] 17a-111b or [§] 17a-112 (j), hold that reunification efforts were not required for [the] respondents.' "

The trial court responded to this court's order for articulation as follows: "In its [June 1, 2015] decision, the trial court found that the credible evidence put forth in this matter clearly and convincingly established both that [the petitioner] made reasonable reunification efforts for the [respondents], and that neither [of the respondents] was either able or willing to benefit from § 17a-112 (j) (1) efforts.

"In its discussion of reunification efforts pursuant to federal law, the trial court also found, by clear and convincing evidence, that further efforts at reunification were not appropriate for either [of the respondents] as to either child.

"On the same date, the trial court granted [the petitioner's] motion for finding of no reunification efforts, specifically making reference to its findings in the [termination of parental rights] decision of the same date.

"The trial court did not make a specific finding that reunification efforts were not required for [the respondents]."

We begin by setting forth our standard of review. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . A case is considered moot if [the trial] court cannot grant the appellant any practical relief through its disposition of the merits . . . . Because a question of mootness implicates the subject matter jurisdiction of this court, it raises a question of law over which we exercise plenary review." (Citations omitted; internal quotation marks omitted.) *JP Morgan Chase Bank, N.A.* v. *Mendez*, 320 Conn. 1, 6–7, 127 A.3d 994 (2015); see also *In re Jorden R.*, 293 Conn. 539, 555–56, 979 A.2d 469 (2009) (discussing mootness in context of failure to challenge basis upon which reasonable efforts finding may rest).

In the present case, it is undisputed that the respondents timely appealed from the judgments of the trial court claiming, inter alia, that the trial court improperly found that the petitioner made reasonable efforts to reunify the respondents with the minor children and that the respondents were unable or unwilling to benefit from reunification efforts. See footnote 1 of this opinion. The petitioner asserts that the respondents' claims are moot because the trial court also found pursuant

to §§ 17a-112 (j) (1) and 17a-111b that reunification efforts were not required. The petitioner claims that, because a finding that reunification efforts are not required under §§ 17a-112 (j) (1) and 17a-111b is an independent basis for terminating the parental rights of the respondents and the respondents have not appealed from that finding in the present case, a determination of the respondents' claims cannot result in practical relief to the respondents.

We agree with the petitioner that a finding that no reasonable efforts were required is an independent basis upon which the trial court could have terminated the parental rights of the respondents. In *In re Jorden R.*, supra, 293 Conn. 554, this court reviewed a decision by the Appellate Court which had concluded, inter alia, that the trial court's factual finding that the respondent was unable or unwilling to benefit from reunification efforts was clearly erroneous. In that case, this court reasoned as follows: "In light of the trial court's finding that the [petitioner] had made reasonable efforts to reunify the respondent with [the minor child] and the respondent's failure to challenge that finding, the Appellate Court's decision, which disturbed only the trial court's finding that reunification efforts were not required, cannot benefit the respondent meaningfully. Despite the Appellate Court's holding, the trial court's ultimate determination that the requirements of § 17a-112 (j) (1) were satisfied remains unchallenged and intact. In short, the Appellate Court's decision affords the respondent no practical relief. The Appellate Court should not have addressed the respondent's claim, but rather, should have declined to do so because it raised a moot issue." (Footnote omitted.) Id., 557. Similarly, a finding that reunification efforts are not required under §§ 17a-112 (j) (1) and 17a-111b is an independent basis on which to terminate the parental rights of a respondent. Therefore, if the trial court made such a finding in the present case, and the respondents did not timely appeal from that finding, a decision by this court that the trial court improperly determined either that the petitioner failed to make reasonable efforts or that the respondents were unable or unwilling to benefit from reunification services could not benefit the respondents meaningfully.

Nevertheless, the state of the record in this case presents a unique issue. The trial court explained in its articulation that it granted the petitioner's "motion for finding of no reunification efforts" and this court has subsequently obtained a copy of the order granting that motion. The trial court file, which was certified by the trial court clerk on June 26, 2015, however, did not contain the trial court's order granting the petitioner's "motion for finding of no reunification efforts." Instead, the certified copy of the trial court file includes an unexecuted order sheet attached to the petitioner's motion. As previously stated in this opinion, a printed

copy of the electronic docket for these matters shows that neither the petitioner's motion nor the trial court's order was entered by the trial court clerk as of June 26, 2015. Furthermore, the order granting the petitioner's "motion for finding of no reunification efforts" that this court ultimately obtained does not contain any indication that the parties were given notice of the order. As a result of the clerical omission of this motion and order from the electronically maintained docket and the certified copy of the trial court file, it is not clear that the respondents had notice of the trial court's determination under §§ 17a-112 (j) (1) and 17a-111b within the time period permitted for appeal. In effect, the integrity of the trial court's record keeping process was compromised, thus potentially affecting the appellate rights of the respondents.

It is undisputed that "[t]he right of a parent to raise his or her children has been recognized as a basic constitutional right. *Stanley* v. *Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). Accordingly, a parent has a right to due process under the fourteenth amendment to the United States constitution when a state seeks to terminate the relationship between parent and child. See *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)." (Footnote omitted.) *In re Yasiel R.*, 317 Conn. 773, 782, 120 A.3d 1188, reconsideration denied, 319 Conn. 921, 126 A.3d 1086 (2015).

On the basis of the foregoing, although we agree that the trial court's finding that no reunification efforts are required would be an independent basis on which to terminate the respondents' parental rights and that, therefore, their appeals would be moot because they did not timely appeal from that finding, we conclude that such a result would violate the due process rights of the respondents in these unique circumstances. Specifically, we cannot conclude that the respondents had an adequate opportunity to appeal from the trial court's determination that reunification efforts are not required because of the clerical error in the present case. Accordingly, in order to protect the due process rights of the respondents in the present case, we must remand the matter to the trial court for a new trial to begin no later than September 15, 2016.

The judgments of the trial court terminating the parental rights of the respondents as to the minor children are reversed and the case is remanded to that court for a new trial in accordance with this opinion.

In this opinion ROGERS, C. J., and PALMER, ZARELLA, McDONALD and ROBINSON, Js., concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** July 21, 2016, the date that this decision was released as a slip opinion,

is the operative date for all substantive and procedural purposes.

[1] Specifically, the respondents claim that the judgments of the trial court should be reversed and the case remanded for a new trial because the trial court did not canvass the respondents pursuant to the rule articulated in *In re Yasiel R.*, 317 Conn. 773, 795, 120 A.3d 1188, reconsideration denied, 319 Conn. 921, 126 A.3d 1086 (2015), which was released during the pendency of these appeals. The respondents further claim that the trial court improperly determined, pursuant to General Statutes (Rev. to 2013) § 17a-112 (j), that: (1) the petitioner had made reasonable efforts to reunify the respondents with their minor children; (2) the respondents were unwilling or unable to benefit from reunification services; and (3) the respondents' parental rights as to Egypt should be terminated under the doctrine of predictive neglect. Because we conclude that the record is not sufficiently clear to determine whether the respondents were properly notified of the basis of the trial court's judgments such that they could properly appeal from its determination that the petitioner was not required to make reunification efforts pursuant to General Statutes (Rev. to 2013) §§ 17a-112 (j) and 17a-111b, and that such a clerical error implicates the due process rights of the respondents, we do not reach the other claims of the respondents, but remand the matter for a new trial.

[2] General Statutes (Rev. to 2013) § 17a-112 (j) provides: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) (A) the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; (C) the child has been denied, by reason of an act or acts of parental commission or omission including, but not limited to, sexual molestation or exploitation, severe physical abuse or a pattern of abuse, the care, guidance or control necessary for the child's physical, educational, moral or emotional well-being, except that nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; (D) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child; (E) the parent of a child under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families; (F) the parent has killed through deliberate, nonaccidental act another child of the parent or has requested, commanded, importuned, attempted, conspired or solicited such killing or has committed an assault, through deliberate, nonaccidental act that resulted in serious bodily injury of another child of the parent; or (G) the parent was convicted as an adult or a delinquent by a court of competent jurisdiction of a sexual assault resulting in the conception of the child, except a conviction for a violation of section 53a-71 or 53a-73a, provided the court may terminate such parent's parental rights to such child at any time after such conviction."

Hereinafter, all references to § 17a-112 are to the 2013 revision of the General Statutes unless otherwise noted.

[3] Because the Commissioner of Children and Families acts on behalf of the Department of Children and Families, references to the petitioner include

both the Department of Children and Families and the Commissioner of Children and Families.

[4] We note that the counsel for the minor children has adopted the brief of the petitioner.

[5] General Statutes (Rev. to 2013) § 17a-111b (b) provides: "The Commissioner of Children and Families or any other party may, at any time, file a motion with the court for a determination that reasonable efforts to reunify the parent with the child are not required. The court shall hold an evidentiary hearing on the motion not later than thirty days after the filing of the motion or may consolidate the hearing with a trial on a petition to terminate parental rights pursuant to section 17a-112. The court may determine that such efforts are not required if the court finds upon clear and convincing evidence that: (1) The parent has subjected the child to the following aggravated circumstances: (A) The child has been abandoned, as defined in subsection (j) of section 17a-112; or (B) the parent has inflicted or knowingly permitted another person to inflict sexual molestation or exploitation or severe physical abuse on the child or engaged in a pattern of abuse of the child; (2) the parent has killed, through deliberate, nonaccidental act, another child of the parent or a sibling of the child, or has requested, commanded, importuned, attempted, conspired or solicited to commit or knowingly permitted another person to commit the killing of the child, another child of the parent or sibling of the child, or has committed or knowingly permitted another person to commit an assault, through deliberate, nonaccidental act, that resulted in serious bodily injury of the child, another child of the parent or a sibling of the child; (3) the parental rights of the parent to a sibling have been terminated within three years of the filing of a petition pursuant to this section, provided the commissioner has made reasonable efforts to reunify the parent with the child during a period of at least ninety days; (4) the parent was convicted by a court of competent jurisdiction of sexual assault, except a conviction of a violation of section 53a-71 or 53a-73a resulting in the conception of the child; or (5) the child was placed in the care and control of the commissioner pursuant to the provisions of sections 17a-57 to 17a-61, inclusive."

Hereinafter, all references to § 17a-111b are to the 2013 revision of the General Statutes unless otherwise noted.

[6] In an articulation issued on October 22, 2015, the trial court clarified that its neglect finding as to Egypt was predicated on the doctrine of predictive neglect.

[7] The petitioner also sought to terminate the respondent father's parental rights with respect to Egypt on the basis of assault resulting in serious bodily injury to another child. See General Statutes (Rev. to 2013) § 17a-112 (j) (3) (F). While the court found "clear and convincing evidence . . . that [the respondent father] made some qualified admissions as to his part in the assault on Mariam," it ultimately concluded that the petitioner had failed to prove this ground for termination against the respondent father.

[8] The respondents appealed the judgments of the trial court to the Appellate Court. On March 2, 2016, after oral argument had taken place in the Appellate Court, we transferred the respondents' appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.