******************************************************************

The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

IN RE D'ANDRE T. ET AL.*
(AC 43883)

Prescott, Suarez and DiPentima, Js.

*Syllabus*

The respondent mother appealed to this court from the judgments of the
trial court terminating her parental rights as to her two minor children
and denying her motion to transfer guardianship of them to her sister,
B. The trial court determined that, pursuant to statute (§ 17a-112 (j) (3)
(B) (i)), the respondent had failed to achieve such a degree of personal
rehabilitation as would encourage the belief that within a reasonable
time she could assume a responsible position in the children's lives.
The court also found that it was not in the children's best interests to
transfer guardianship of them to B, as B was not a suitable guardian in
light of her having allowed one of the children to be in the respondent's
care in contravention of directives by the Department of Children and
Families. On appeal, the mother claimed that the trial court denied
her a fundamentally fair proceeding by treating her motion to transfer
guardianship with less regard than the petitions to terminate her parental
rights. She further claimed that this court should exercise its supervisory
authority over the administration of justice to require the Superior Court
to make certain written findings in all cases in which a court is consider-
ing a transfer of guardianship motion and a petition to terminate parental
rights concurrently. *Held*:

1. This court had jurisdiction over the respondent mother's appeal, which
   presented an actual, justiciable controversy, notwithstanding the asser-
   tion by the petitioner, the Commissioner of Children and Families, that
   the appeal should be dismissed because the mother's request for a new
   procedural rule was not tethered to any actual controversy and she did
   not claim that the trial court erred in its decisions on the termination
   petitions or the motion to transfer guardianship; in light of the mother's
   contention that the trial court's failure to rule on her motion to transfer
   guardianship prior to ruling on the termination of parental rights peti-
   tions created an appearance that the court's default preference was to
   terminate her parental rights, the requirements of justiciability were
   satisfied, as there was an actual live controversy as to whether the
   court properly handled the motion to transfer guardianship, the parties'
   interests were adverse, and this court was capable of adjudicating
   whether the trial court properly considered the mother's motion, which
   could result in practical relief to her.

2. This court declined to exercise its supervisory authority over the adminis-
   tration of justice to adopt the respondent mother's proposed procedural
   rule, which implicated a policy consideration best addressed by the
   legislature, as the mother's proposed rule would not create a new proce-
   dural rule but would ask this court to rewrite the statutory (§ 46b-129
   (j) (3)) scheme controlling transfer of guardianship motions when the
   legislature is better suited to gather and to assess the facts necessary
   to make that policy determination; the failure to adopt the mother's
   proposed rule did not implicate the fairness of the proceeding and would
   not enhance public confidence in the integrity of the judicial system,
   as there was no evidence of pervasive, significant problems or conduct
   that threatened the sound administration of justice, and, under the
   existing statutory (§ 17a-112 (k) (4)) scheme, the trial court, having been
   obligated to make certain written findings concerning guardians when
   considering a petition for the termination of parental rights, made such
   written findings on the motion to transfer guardianship and explained
   why it did not believe that B was a suitable guardian.

Argued October 5—officially released November 17, 2020**

*Procedural History*

Petitions by the Commissioner of Children and Fami-
lies to terminate the parental rights of the respondents
as to certain of their minor children, brought to the

Superior Court in the judicial district of Hartford and transferred to the judicial district of Middlesex, Child Protection Session at Middletown, where the matter was tried to the court, *Hon. Barbara M. Quinn*, judge trial referee; thereafter, the court denied the respondent mother's motion to transfer guardianship; judgments terminating the respondents' parental rights, from which the respondent mother appealed to this court. *Affirmed.*

*Albert J. Oneto IV*, assigned counsel, for the appellant (respondent mother).

*Evan O'Roark*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

DiPENTIMA, J. The respondent mother, Debralee B.,[1] appeals from the judgments of the trial court terminating her parental rights as to her two minor children on the ground that she failed to achieve a sufficient degree of personal rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B) (i). On appeal, the respondent does not challenge the underlying factual findings of the trial court but claims that the court denied her a fundamentally fair proceeding by treating her motion to transfer guardianship to her sister, Carmen B., with less regard than the petitions to terminate her parental rights. The respondent urges us to use our supervisory authority over the administration of justice to reverse the judgments terminating her parental rights and denying her motion to transfer guardianship, to award her a new trial, and to obligate the trial court to apply a new procedural rule that would require the Superior Court to make certain written findings in all cases in which a court is considering a transfer of guardianship motion and a petition to terminate parental rights concurrently. We decline to exercise our supervisory authority, and, accordingly, affirm the judgments of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. The respondent has two minor children, D'Andre T. and D'Ziah D. The Department of Children and Families (department) first became involved with the respondent in October, 2015, after receiving a report that she was fighting with D'Andre's father on the street and that D'Andre had been left at home alone. The department substantiated the report and referred the respondent for ongoing services. Following additional incidents in April, 2016, the petitioner, the Commissioner of Children and Families, initiated neglect proceedings. D'Andre was removed from the respondent's care pursuant to an order of temporary custody on June 24, 2016, and was placed with his maternal aunt, Carmen B., on June 26, 2016. D'Andre continued to reside with Carmen B., and, on September, 27, 2016, he was adjudicated neglected and committed to the care and custody of the petitioner.

While the case involving D'Andre was pending, the respondent gave birth to D'Ziah. When D'Ziah was born, both the respondent and D'Ziah tested positive for phencyclidine (PCP). The petitioner filed a petition of neglect and a motion for an order of temporary custody on October 21, 2016. D'Ziah was removed from the respondent's care at the hospital, and she was placed in the care of a family friend. She was adjudicated neglected on July 31, 2017, and committed to the care and custody of the petitioner. D'Andre later was placed with his sister in the same household after Carmen B. violated the department's requirements for his care by allowing the respondent to have two unsupervised visits

with D'Andre. At one of those visits, the police became involved.

The court ordered specific steps with which the respondent was required to comply for reunification with D'Andre and D'Ziah. The respondent complied with these specific steps only sporadically and repeatedly failed to use the services the department offered to her. She also continued to use PCP. Although she participated in visits with her children supervised by the department, the visits did not go well. The respondent often behaved inappropriately, and D'Ziah had to be taken to a hospital after the respondent handled her too roughly during one visit.

On February 8, 2018, the petitioner filed petitions to terminate the respondent's parental rights with respect to both children on the ground that the respondent had failed to achieve a sufficient degree of personal rehabilitation that would encourage the belief that, within a reasonable time, she could assume a responsible position in the lives of her children. The court consolidated the petitions with a motion to transfer guardianship to Carmen B., which the respondent filed on November 30, 2017, prior to the filing of the petitions to terminate her parental rights.[2]

A trial was held on four nonconsecutive days in April, May, and November, 2019. On December 3, 2019, the court, in a thorough memorandum of decision, granted the termination petitions as to the respondent.[3] The court found, by clear and convincing evidence, that the respondent had "not made sufficient progress for a long enough period of time to assume that she is stable, had adequately addressed her mental health difficulties, including through the use of medication and is free of PCP permanently. There is no evidence of such changes in her behavior and outlook to support the claim that she could reasonably safely care for her children, now or in the future." Accordingly, the court found that the petitioner had proven that the respondent had failed to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (i).

In the dispositional phase of the proceedings, the court made detailed findings on the seven criteria set out in § 17a-112 (k) as to the best interests of the children.[4] On the basis of these findings, the court concluded that terminating the respondent's parental rights with respect to D'Andre and D'Ziah was in their best interests. The court also addressed the respondent's motion to transfer guardianship. The court determined that Carmen B. was not a suitable guardian for the respondent's children, citing her past conduct in allowing D'Andre to be in the respondent's care in contravention of the department's directives. The court also found that it was not in the best interests of the children to transfer guardianship to Carmen B. and, therefore, denied the respondent's motion to transfer guardian-

ship. This appeal followed.

On appeal, the respondent does not argue that the court's factual findings were erroneous, nor does she claim that the court failed to comply with its statutory obligations to make findings on the seven criteria enumerated in § 17a-112 (k). Instead, the respondent contends that the court should have ruled on her motion to transfer guardianship prior to ruling on the petitions to terminate her parental rights and that the court treated her motion with inadequate consideration. The respondent urges us to use our supervisory authority to reverse the judgments terminating her parental rights and to adopt a new procedural rule, to be applied on remand, requiring the Superior Court to make certain written findings in all cases in which the court is considering a transfer of guardianship motion and a petition to terminate parental rights concurrently. Specifically, pursuant to the respondent's proposed procedural rule, a trial court, when considering whether a guardian is " 'suitable and worthy,' " would be required to articulate written findings as to whether the guardian has the ability "[1] to show love and affection for the child, [2] to protect the child's health, education, and welfare, [3] to provide the child with food, clothing, medical care, and a domicile, and [4] to oversee the child's social and religious guidance." The court would then need to make detailed written findings addressing whether the transfer of guardianship is in the child's best interest. For this determination, the respondent proposes that the court should consider whether "[1] the placement will foster the child's sustained growth, development, well-being, and stability of environment, [2] the child would benefit from ongoing contact with a parent or the parent's extended family, to include the family's history, tradition, and culture, [3] there is any potential detriment to the child by terminating parental rights, and [4] the placement is outweighed by the benefit to the child of being placed in a stable adoptive home if the termination petition is granted."[5] The respondent claims that adopting such a procedural rule would guide the trial court "in deciding matters that involve conflicting permanency options for children in foster care,[6] one by transfer of guardianship to a relative, and the other by termination of parental rights and adoption, where the court would be required to demonstrate through written findings that it has considered all relevant probative criteria bearing upon the transfer of guardianship as a less restrictive means of permanency . . . ." (Footnote added.) According to the respondent, such a rule is desirable because it would "assure the litigants and the public that the judiciary's default preference is not to terminate parental rights but to promote legislative policies favoring the placement of children in foster care with relatives."

In response, the petitioner argues that we should dismiss the respondent's appeal because her request

for a new procedural rule is not connected to any actual controversy in that she is not challenging the termination of her parental rights. The petitioner further contends that, to the extent that we decide to review the respondent's claim, we should decline to exercise our supervisory authority because there are no exceptional circumstances in the present case warranting the use of such powers. We disagree with the petitioner's claim that the appeal should be dismissed but agree that we should not exercise our supervisory authority.

I

We first turn to the issue of whether we have jurisdiction over the respondent's appeal. The petitioner contends that we should dismiss her appeal because the respondent's request for a new procedural rule is not tethered to any actual controversy. In the petitioner's view, the respondent does not claim that the trial court erred in making its decision either on the termination of parental rights petitions or on the motion to transfer guardianship. Consequently, the petitioner claims that the respondent is asking this court to issue an advisory opinion. We do not agree.

We begin by setting forth our standard of review. "Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . A case is considered moot if [the trial] court cannot grant the appellant any practical relief through its disposition of the merits . . . ." (Internal quotation marks omitted.) *In re Egypt E.*, 322 Conn. 231, 241, 140 A.3d 210 (2016). "Under such circumstances, the court would merely be rendering an advisory opinion, instead of adjudicating an actual, justiciable controversy." (Internal quotation marks omitted.) *St. Juste* v. *Commissioner of Correction*, 328 Conn. 198, 208, 177 A.3d 1144 (2018).

The respondent's claims on appeal demonstrate that there is an actual, justiciable controversy. Here, the respondent contends that the court erred in its handling of her motion to transfer guardianship to Carmen B. Specifically, she argues that the court should have ruled on her motion prior to ruling on the termination of parental rights petitions. She contends that the court's failure to do so denied her a fundamentally fair proceeding by creating an appearance that its default preference was to terminate her parental rights. She further claims that the court's memorandum of decision, which disposed of her motion to transfer guardianship in eleven sentences, reflects that it treated her motion with less

consideration than the termination of parental rights petitions. Moreover, due to these perceived errors, the respondent asks this court to reverse the judgments of the trial court, to award her a new trial, and to obligate the trial court to apply her proposed procedural rule.

In light of the respondent's claims of error and request for relief, we conclude that the respondent's appeal presents an actual, justiciable controversy. We conclude that the justiciability requirements have been satisfied because (1) there is an actual live controversy between the respondent and the petitioner as to whether the trial court properly handled the respondent's motion to transfer guardianship, (2) the parties' interests are adverse, with the respondent asserting that the court should have ruled on her motion to transfer guardianship first and the petitioner asserting that the court's consideration of her motion was proper, (3) this court is capable of adjudicating whether the court properly considered the respondent's motion, and (4) our determination of whether the court properly handled her motion could result in practical relief to the respondent if we were to conclude that the court erred and we adopt her proposed procedural rule. See *In re Egypt E.*, supra, 322 Conn. 241.

We are unpersuaded by the petitioner's argument to the contrary. Although our Supreme Court declined to exercise its supervisory authority in the cases that the petitioner cites, the court declined to do so, not because it concluded that it did not have jurisdiction over the appeal, but because it determined that the exercise of its supervisory authority was unnecessary. See, e.g., *State* v. *Weatherspoon*, 332 Conn. 531, 553, 212 A.3d 208 (2019) (declining to establish rule when no such injustice occurred in case); *State* v. *Castillo*, 329 Conn. 311, 337, 186 A.3d 672 (2018) (declining to exercise supervisory authority when facts of defendant's case did not give rise to purported issue and defendant failed to demonstrate that issue was pervasive problem). Accordingly, we have jurisdiction over the respondent's appeal.

II

We now turn to the issue of whether we should exercise our supervisory authority to adopt the new procedural rule proposed by the respondent. Because we conclude that the proposed procedural rule implicates policy considerations better considered by the legislature, we decline to do so.

"Supervisory authority is an extraordinary remedy that should be used sparingly . . . . Although [a]ppellate courts possess an inherent supervisory authority over the administration of justice . . . [that] authority . . . is not a form of free-floating justice, untethered to legal principle . . . . Our supervisory powers are not a last bastion of hope for every untenable appeal.

They are an extraordinary remedy to be invoked only when circumstances are such that the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole . . . . Constitutional, statutory and procedural limitations are generally adequate to protect the rights of the [litigant] and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstance [in which] these traditional protections are inadequate to ensure the fair and just administration of the courts. . . . Overall, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . Thus, we are more likely to invoke our supervisory powers when there is a pervasive and significant problem . . . or when the conduct or violation at issue is offensive to the sound administration of justice . . . .'' (Internal quotation marks omitted.) *DeChellis* v. *DeChellis*, 190 Conn. App. 853, 870–71, 213 A.3d 1, cert. denied, 333 Conn. 913, 215 A.3d 1210 (2019).

We decline the respondent's invitation to exercise our supervisory authority in the present case. Matters pertaining to child protection, including the termination of parental rights, are heavily regulated by statute, and our legislature has crafted specific requirements that courts must comply with when determining, for example, whether to terminate parental rights. Pursuant to § 17a-112 (k), a court hearing a petition for the termination of parental rights is required to make specific written findings on seven criteria. The legislature, however, has not enacted a similar requirement for courts deciding a motion for transfer of guardianship. Transfer of guardianship motions are adjudicated pursuant to subsection (j) of General Statutes § 46b-129. *In re Avirex R.*, 151 Conn. App. 820, 833, 96 A.3d 662 (2014). Section § 46b-129 (j) (3) provides in relevant part that, ''[i]f the court determines that the commitment should be revoked and the child's or youth's legal guardianship or permanent legal guardianship should vest in someone other than the respondent parent, parents or former guardian, or if parental rights are terminated at any time, there shall be a rebuttable presumption that an award of legal guardianship or permanent legal guardianship . . . shall be in the best interests of the child or youth and that such caregiver is a suitable and worthy person to assume legal guardianship or permanent legal guardianship . . . .''

As indicated by the clear language of § 46b-129 (j) (3), the court is not required to make specific findings on certain enumerated criteria when ruling on a motion for transfer of guardianship. The rule that the respondent is asking us to adopt, which specifies eight criteria on which trial courts would be required to make written findings, would not be creating a new procedural rule,

but, rather, would be asking us to rewrite the statutory scheme controlling transfer of guardianship motions. "It is not a proper function of this [court] to rewrite statutes." *State* v. *Lee*, 30 Conn. App. 470, 484, 620 A.2d 1303 (1993), aff'd, 229 Conn. 60, 640 A.2d 553 (1994). The legislature is better suited to gather and to assess the facts necessary to make this policy determination, and we defer to that branch of our government. See *State* v. *Moore*, 334 Conn. 275, 278–79, 221 A.3d 40 (2019) (noting reluctance to exercise supervisory authority when legislature already had acted in area of respondent's proposed procedural rule); *State* v. *Lockhart*, 298 Conn. 537, 577, 4 A.3d 1176 (2010) (deferring to legislature and declining to exercise supervisory power).

The procedural rule that the court adopted in *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015), the main case on which the respondent relies in arguing that we should exercise our supervisory authority, is distinguishable from the rule that the respondent asks us to adopt here. In *In re Yasiel R.*, our Supreme Court invoked its supervisory authority to adopt a procedural rule requiring a brief canvass of all parents immediately before a parental rights termination trial. Id., 794. During the canvass, respondents would be advised, in part, of the nature and legal effect of a termination of parental rights proceeding, their ability to confront and to cross-examine witnesses, their right to representation by counsel, and their right to present evidence opposing the allegations. Id., 795. In adopting this procedural rule, our Supreme Court noted that the lack of such a canvass may give the appearance of unfairness "insofar as it may indicate a lack of concern over a parent's rights and understanding of the consequences of the proceeding." Id., 794. Our Supreme Court concluded that "public confidence in the integrity of the judicial system would be enhanced by a rule requiring a brief canvass of all parents immediately before a parental rights termination trial so as to ensure that the parents understand the trial process, their rights during the trial and the potential consequences." Id. The court also stated that courts frequently canvass parties in other circumstances, such as when a criminal defendant waives his or her right to a jury trial and when a criminal defendant wishes to represent himself or herself, and that a canvass would neither materially delay the termination proceeding nor unduly burden the state. Id., 795–96. Accordingly, our Supreme Court concluded that imposing the canvass rule was an appropriate exercise of its supervisory authority. Id., 796.

The considerations that led the court in *In re Yasiel R.* to invoke its supervisory authority are not present here. Unlike the proposed rule presently before us, the procedural rule from *In re Yasiel R.* did not require the court, in effect, to rewrite a statutory scheme. The procedural rule that the court adopted there "merely constitute[d] an advisement to [respondents] of [their]

rights regarding the trial" and did not effect a change in the substantive law of child protection. Id., 795. In the present case, the failure to adopt the respondent's proposed procedural rule also does not risk creating the appearance of unfairness. The proposed rule does not implicate the fairness of the proceeding itself, and would not enhance public confidence in the integrity of the judicial system by ensuring that parties to a termination and guardianship proceeding understand the trial process, their rights during trial, and the potential consequences. Moreover, under the existing statutory scheme, the trial court is obligated to make certain written findings concerning guardians when considering a petition for the termination of parental rights. Specifically, the court is required to make written findings on the feelings and emotional ties of the child with respect to his or her parents and guardians. See General Statutes § 17a-112 (k) (4). It thus cannot be said that the respondent's proposed rule is necessary to ensure that courts properly and fairly consider transfer of guardianship motions raised concurrently with a petition for the termination of parental rights. Indeed, the trial court here made written findings on the respondent's motion and explained why it did not believe that Carmen B. was a suitable guardian. In light of these considerations, *In re Yasiel R.* is distinguishable. This simply is not the occasion to invoke the extraordinary remedy of our supervisory authority where the proposed procedural rule implicates a policy consideration best addressed by the legislature and there is no evidence of pervasive, significant problems[7] or conduct that threatens the sound administration of justice. Accordingly, we decline to exercise our supervisory authority to adopt the respondent's proposed procedural rule.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book §79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** November 17, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Because only the respondent mother has appealed from the judgments terminating her parental rights; see footnote 3 of this opinion; our references in this opinion to the respondent are to the mother.

[2] The respondent's motion to transfer guardianship to Carmen B. was the last of three motions to transfer guardianship that she had filed prior to the filing of the petitions to terminate her parental rights. It appears that the respondent filed her first motion to transfer guardianship on June 5, 2017, but it is unclear from the record to whom she was seeking to transfer guardianship and if the court ever ruled on her motion. The respondent filed her second motion to transfer guardianship on August 22, 2017, in which she sought to transfer guardianship to a family friend, Quetcy R. On October 26, 2017, the court, *Dyer, J.*, denied the motion on the ground that it was not in the children's best interests to transfer guardianship to Quetcy R. Thereafter, the respondent filed the motion to transfer guardianship to Carmen B. on November 30, 2017.

[3] The court also granted the petitions as to the fathers of D'Andre and

D'Ziah. The court granted the petition as to D'Ziah's father on the basis of his consent to the termination of his parental rights. The court granted the petition as to D'Andre's father on the grounds of abandonment and failure to have an ongoing parent-child relationship with D'Andre. Neither father has appealed.

[4] General Statutes § 17a-112 (k) sets out the following factors: "Except in the case where termination of parental rights is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the [department] has made reasonable efforts to reunite the family pursuant to the federal Adoption and Safe Families Act of 1997, as amended from time to time; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[5] The respondent derived her proposed "suitable and worthy" factors from *In re Isaiah J.*, 52 Conn. Supp. 485, 72 A.3d 446 (2011), aff'd, 141 Conn. App. 474, 62 A.3d 635, cert. denied, 308 Conn. 936, 66 A.3d 498, cert. denied sub nom. *Katherine D.* v. *Katz*, 571 U.S. 937, 134 S. Ct. 359, 187 L. Ed. 2d 249 (2013), and her proposed best interest of the child factors from *In re Dependency of A.C.*, 123 Wn. App. 244, 98 P.3d 89 (2004).

[6] Pursuant to General Statutes § 45a-604 (8), "permanent guardianship" is defined as "a guardianship . . . that is intended to endure until the minor reaches the age of majority without termination of the parental rights of the minor child's parents . . . ." It thus appears that guardianship can be a permanency option for children in foster care. We note that the respondent, however, did not move to have Carmen B. named as the permanent guardian of her children in her motion for transfer of guardianship. Instead, it appears that the respondent was seeking to transfer guardianship to Carmen B. on a temporary basis.

[7] The respondent has conceded that the number of cases to which the rule would apply is likely to be " 'extremely small.' "

———————————————